# IN THE UNITED STATES DISTRICT COURT FOR
# THE SOUTHERN DISTRICT OF WEST VIRGINIA

## HUNTINGTON DIVISION

PEGGY WAUGH, Administratrix of the Estate of
FRANCES MARIE BLANKENSHIP, deceased,

           Plaintiff,

v.                                              CIVIL ACTION NO. 3:18-0941

590 NORTH FORK ROAD OPERATIONS LLC
D/B/A TEAYS VALLEY CENTER and
JOHN DOES "1" THROUGH "5",

           Defendants.

## MEMORANDUM OPINION AND ORDER

In a complaint filed on May 17, 2018, Plaintiff Peggy Waugh asserts three counts under the West Virginia Wrongful Death Statute against Defendant 590 North Poplar Fork Road Operations LLC d/b/a Teays Valley Center. *Compl.*, ECF No. 1; *see* W. Va. Code §§ 55–7–5 through 7. Defendant then filed a Motion to Dismiss and Compel Arbitration on July 6, 2018. *Def's Mot. to Dismiss*, ECF No. 6.

The parties have fully briefed the issues and the motion is now ripe for adjudication. As explained below, the Court **DENIES** Defendant's Motion to Dismiss and Compel Arbitration.

**I. BACKGROUND**

Plaintiff alleges the following facts in her complaint. In July of 2017 Frances Marie Blankenship was a rehabilitation patient at Teays Valley Center in Hurricane, West Virginia. *Compl.*, at ¶ 6. Blankenship's medical history included a cerebrovascular accident, generalized weakness, intermittent confusion, difficulty walking, and osteoporosis. *Id.* On July 25, 2017, Blankenship was heard yelling from the next room and was found lying on the ground beside her

bed in a pool of blood. *Id.* at ¶ 7. Teays Valley Center's agents, servants, or employees controlled the bleeding, her head and neck was stabilized, and EMS was called. *Id.* Upon arrival EMS found Blankenship lying on the floor, alert and oriented, with a laceration and hematoma above her eye. *Id.* EMS indicated that Blankenship had full memory and stated she fell forward out of a wheelchair and struck her head on the wall before falling to the floor. *Id.* Blankenship was then transported to Cabell Huntington Hospital where she was found to be alert and oriented, and she was eventually discharged that night and returned to Teays Valley Center. *Id.* at ¶ 8.

After the fall, Blankenship continued to decline at Teays Valley Center and was transferred to Hospice House on August 9, 2017. *Id.* at ¶ 9. During that time, it was noted that Blankenship had a large hematoma left frontal, mumbled speech, ataxia, coccyx red, and modest LLL pneumonia and/or effusion. *Id.* Blankenship passed away on August 13, 2017, and the Kanawha County Coroner documented Blankenship's cause of death as complications of injuries from the fall at Teays Valley Center. *Id.*

**II. STANDARD OF REVIEW**

Federal Rule 8(a) requires a complaint to include "a short and plain statement of the claim … showing entitle[ment] to relief." Fed. R. Civ. P. 8(a)(2). To overcome a motion to dismiss under Federal Rule 12(b)(6), a complaint must also be plausible. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007). This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (internal quotations and citations omitted). A complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citation omitted). Facial plausibility exists when a claim contains "factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).

Accepting the factual allegations in the complaint as true—even when doubtful—the allegations "must be enough to raise a right to relief above the speculative level …." *Twombly*, 550 U.S. at 555 (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should … be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotations and citations omitted). "Although for the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true, we are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotations and citation omitted). Finally, a court must also "draw[ ] all reasonable factual inferences from those facts [alleged] in the plaintiff's favor …." *Martin v. Duffy*, 858 F.3d 239, 248 (4th Cir. 2017) (internal quotations omitted) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002) (internal citations omitted)).

When considering a motion to dismiss under 12(b)(6) a court generally cannot accept materials regarding matters outside of the pleadings. If, when ruling on a motion to dismiss under 12(b)(6), matters outside the pleadings are "*not excluded* by the court, the motion shall be treated as one for *summary judgment* and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp*., 109 F.3d 993, 995 (4th Cir. 1997) (citing Fed. R. Civ. P. 12(d)) (emphasis added). To obtain summary judgment, the moving party must show that no genuine issue as to any material fact remains and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, a court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, a court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986). Any inference, however, "must fall within the range of reasonable probability and not be so tenuous as to amount to speculation or conjecture." *JKC Holding Co. v. Wash. Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001) (citation omitted).

**III. DISCUSSION**

In support of its motion, Defendant first asserts that Terri Ellis, the adult daughter of Blankenship, signed a binding arbitration agreement which applies to the claims pled in the complaint, and thus this Court must dismiss the complaint and compel arbitration. *Def's Mot. to Dismiss*, at 1. In support of this argument, Defendant attached the arbitration agreement to its Motion to Dismiss and Compel Arbitration. *Exhibit A*, ECF No. 6-1.[1] Plaintiff argues in response that there is no evidence Ellis had the legal authority to bind Blankenship to the arbitration agreement and therefore the complaint should not be dismissed. *See Mem. in Opp. to Def.'s Mot. to Dismiss*, ECF No. 10, at 8. The Court agrees with Plaintiff.

While West Virginia law recognizes the enforceability of arbitration agreements based on the Federal Arbitration Act, the West Virginia Supreme Court also recognizes *challenges* to the enforceability of arbitration agreements "under state common law principles that are not specific to arbitration and pre-empted by the [Federal Arbitration Act]." *See Brown v. Genesis Healthcare Corp.*, 729 S.E.2d 217, 222 (W. Va. 2013). Specifically, in a case with remarkably similar facts—*State ex rel. AMFM, LLC v. King*, 740 S.E.2d 66 (W. Va. 2013)—the West Virginia Supreme Court held that an arbitration agreement between a patient and health care facility was

---

[1] The Court will consider this attached agreement, which is material outside the pleadings, and therefore this motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

unenforceable when the patient's health care surrogate signed the agreement on the patient's behalf because the surrogate did not have the authority to bind the patient to an arbitration agreement. *See King*, 740 S.E.2d at 70, 72. The Court reasoned that the surrogate, who was also the patient's daughter, did not have authority because the agreement was not a *precondition* of the patient's admission to the facility, and therefore the signing of the agreement was not a "health care decision." *See id.* at 72 (emphasis added).

Just as in *King*, the person that Defendant asserts bound Blankenship to the arbitration agreement was her daughter and health care surrogate. *See Mem. in Opp. to Def.'s Mot. to Dismiss*, at 8. Also, similar to *King*, the arbitration agreement here specifically states that "[s]igning this agreement is voluntary and *not a condition* of the Patient's admission into this Center." *Exhibit A*, at 1 (emphasis added). Thus, pursuant to *King*, because the agreement was not a precondition of Blankenship's admission to the facility, Ellis did not have the authority to bind Blankenship to the arbitration agreement, and the agreement is therefore unenforceable.

The only support Defendant provides for the proposition that Ellis had the authority to bind Blankenship to the arbitration agreement is the fact that a Health Care Decision Making Form "signed by Ms. Ellis [claims she] was Ms. Blankenship's durable power of attorney for health care upon Ms. Blankenship's admission to Teays Valley Center …." *Reply Mem. in Supp. of Mot. to Dismiss*, ECF No. 11, at 1–2; *Exhibit 1*, ECF No. 11-1. Defendant's reliance on this document is problematic for two reasons. First, in a footnote in *King*, the West Virginia Supreme Court suggested that a medical power of attorney's authority is no greater than a health care surrogate's authority. *See King*, 740 S.E.2d at 75 n.9. Thus, even if Ellis *was* Blankenship's power of attorney for health care, the same analysis above would result in an unenforceable arbitration agreement. Second, Defendant's reliance on an internal document that Ellis signed stating she was

Blankenship's power of attorney for health care is irrelevant here. The issue is not whether Defendant had reason to *believe* Ellis had power of attorney—the issue is whether in *fact* Ellis had power of attorney, and Defendant's internal document does not provide authoritative evidence of that fact.[2] As a result, the Court finds that the arbitration agreement is unenforceable against Blankenship.

Next, Defendant argues—for the first time in its Reply—that this Court does not even have the authority to decide the above question on the merits because the "delegation clause" in the arbitration agreement leaves the question of enforceability of the arbitration agreement to an arbitrator. *See Reply Mem. in Supp. of Mot. to Dismiss*, at 4–5. The Court disagrees.

A delegation clause is "a sentence or two assigning to the arbitrator any disputes related to the *validity* of the arbitration [agreement]." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 86 (2010) (emphasis added). While this Court does not dispute the enforceability of delegation clauses in arbitration agreements, the United States Supreme Court has held that "[t]he issue of the contract's validity is different from the issue whether any agreement between the [parties] was ever concluded," and its opinion in *Jackson*, cited by Defendant, "address[es] only the former." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444 n.1 (2006); *Jackson*, 561 U.S. at 70 n.2. Additionally, multiple circuits have held that it is for the court—not the arbitrator—to decide whether the signor lacked authority to commit the alleged principal. *See Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 107 (3d Cir. 2000); *Sphere Drake Ins. Ltd. v. All American Ins. Co.*, 256 F.3d 587, 591–92 (7th Cir. 2001); *Allen v. Regions Bank*, 389 F. App'x 441, 446 (5th Cir. 2010). Therefore, because Plaintiff asserts that Ellis did not have the *authority* to bind Blankenship to the

---

[2] Despite Defendant's request, the Court chooses not to delay ruling on this issue until Defendant conducts discovery. *See Reply Mem. in Supp. of Mot. to Dismiss*, at 2. However, the parties are currently in the discovery phase, and Defendant has the option of filing a new motion if evidence is obtained that proves Ellis had medical power of attorney over Blankenship.

arbitration agreement, it is proper for the Court to decide whether the arbitration agreement is enforceable. Thus, for the reasons mentioned above, the Court finds that the arbitration agreement is unenforceable and Defendant is not entitled arbitration or judgment as a matter of law.[3]

## IV. CONCLUSION

Based upon the analysis provided above, the Court **DENIES** Defendant's Motion to Dismiss and Compel Arbitration.

The Court will defer entering a Scheduling Order in this matter until after the conclusion of the December 3, 2018 mediation.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: November 6, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff also argues that the arbitration agreement is unenforceable because it is unconscionable. *Mem. in Opp. to Def.'s Mot. to Dismiss*, at 9. Because the Court finds the arbitration agreement unenforceable for other reasons, the Court will not consider the issue of unconscionability.